# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| **OPTRASCAN, INC.**<br><br>Plaintiff,<br><br>v.<br><br>**MORPHLE LABS, INC.,**<br><br>Defendant. | Court No. 1:24-cv-00649-JCG |

## OPINION AND ORDER

This matter involves patent infringement claims filed by Optrascan, Inc. ("Optrascan" or "Plaintiff") against Morphle Labs, Inc. ("Morphle" or "Defendant"). Optrascan alleges that Morphle infringed two of its patents, both of which involve receiving, transferring, scanning, and analyzing microscope slides. Morphle filed a motion to dismiss the amended complaint. For the reasons discussed below, Morphle's motion to dismiss is denied.

**I.      Background**

Optrascan is the exclusive owner by assignment of U.S. Patents Nos. 10,338,365 (the '365 Patent) and 10,586,376 (the '376 Patent) (collectively, "Asserted Patents"), and holds all rights, title, and interest in them. Am. Compl. ¶ 2 (D.I. 11). The '365 Patent is titled "Slide Storage, Retrieval, Transfer, and Scanning System for a Slide Scanner" and was issued by the U.S. Patent and

Trademark Office ("USPTO") on July 2, 2019.  Am. Compl. at Ex. A ("'365 Patent").  The '376 Patent is titled "Automated Method of Predicting Efficacy of Immunotherapy Approaches" and was issued by the USPTO on March 10, 2020. Id. at Ex. B ("'376 Patent").

Four inventors associated with Optrascan developed an automated storage, retrieval, transfer, scanning, and digital conversion system for microscopic slides, which is presented in the '365 Patent.  Id. ¶ 11–12.  Conventionally, samples are analyzed using an optical microscope in which slides are stored, retrieved, and transferred for scanning by hand.  Id. ¶ 12.  Similarly, a trained pathologist can examine and analyze slides using an optical microscope.  Id. ¶ 12.  Optrascan does not allege that it developed the first automated slide system or digital pathology screening process.

Instead, Optrascan asserts that it invented a unique, consolidated system "that is robust[,] automated, accurate, simple to use, and low cost."  Id. ¶ 13. Optrascan highlights that its new system "can also pick up slides of various thicknesses, hold them securely during the scanning process, and deposit them back into slide storage once the scanning is complete."  Id. ¶ 13.

Three inventors associated with Optrascan developed an automated method for predicting the efficacy of immunotherapy treatments, which is presented in the '376 Patent.  Id. ¶ 27.  Optrascan describes its automated method as consolidating

several functions that are already in use. Id. ¶ 28. Specifically, Optrascan's application system can execute "whole slide scanning of biological specimens, image acquisition, image management, and image analysis to detect histological and immunohistochemical biomarkers," within its scanner and without using third-party software. Id. Optrascan alleges that its '376 Patent represents a significant advancement over prior art systems and manual analysis. Id. ¶ 29.

Optrascan's Amended Complaint alleges that Morphle willfully infringed one or more claims of each of the Asserted Patents. Id. ¶¶ 10–38. In particular, Optrascan states that Morphle's "MorphoLens 240" infringes at least claim 1 of its '365 Patent. Id. ¶ 15. Optrascan asserts that the MorphoLens 240's system for storing, retrieving, and transferring slides for scanning operates in substantially the same way as Optrascan's '365 Patent to achieve the same result. Id. ¶ 20. Based upon its information and belief, Optrascan alleges that the MorphoLens 240's support base moves horizontally in an X-Y plane when transferring slides for scanning, and its slide basket moves vertically along a Z axis when transferring slides for storage. Id. ¶ 22.

In regard to its '376 Patent, Optrascan alleges that Morphle's HemoLens 16 infringes Optrascan's patented technology because Defendant's product is a slide scanner that includes both an image acquisition unit and a processor that can analyze cells and can compute a treatment efficacy score. Id. ¶ 31. Optrascan

generally asserts that the MorphoLens 240 infringes its '376 Patent. Id. ¶ 35. Optrascan states that Morphle was informed in writing by November 17, 2022 that their products infringed the Asserted Patents, but Morphle continues to sell and offer to sell its products. Id. ¶¶ 14, 30.

Optrascan filed a patent infringement suit against Morphle in the United States District Court for the Western District of Texas in 2023. Compl. (D.I. 1), OptraSCAN, Inc. v. Morphle Labs Inc., No. 1:23-CV-733-RP (W.D. Tex.). The district court held that venue was improper and dismissed Optrascan's complaint. Order (Apr. 18, 2024) (D.I. 32) adopting R. & R. (Apr. 3, 2024) (D.I. 31), OptraSCAN, Inc. v. Morphle Labs Inc., No. 1:23-CV-733-RP (W.D. Tex.). Optrascan refiled its patent infringement suit in this Court on May 31, 2024, and most recently amended its complaint on July 10, 2024. Compl. (D.I. 1); Am. Compl.

Optrascan's Amended Complaint alleges that Morphle willfully infringed one or more claims of each of the Asserted Patents and seeks injunctive relief, monetary damages, and attorneys' fees. Am. Compl. ¶¶ 23, 36. Morphle moved to dismiss the Amended Complaint on July 24, 2024. Def.'s Mot. Dismiss Am. Compl. & Def. Br. Supp. Mot. Dismiss ("Def.'s Br.") (D.I. 12–13). Optrascan opposed the motion to dismiss, and Morphle replied in further support of its motion. Pl.'s Br. Opp. Mot. Dismiss ("Pl.'s Br.") (D.I. 20); Def.'s Reply Br. Supp.

Mot. Dismiss ("Def.'s Reply Br.") (D.I. 21). The Court held oral argument on Morphle's motion to dismiss on September 19, 2024. Oral Arg. Tr. (D.I. 31).

## II. Jurisdiction and Legal Standard

The Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338, which grant the Court jurisdiction over civil actions relating to patents, plant variety protection, copyrights, and trademarks.

Federal Rule of Civil Procedure 8(a) requires that pleadings contain a short and plain statement of the claim showing that the pleader is entitled to relief. Fed. R. Civ. P. 8(a)(1). If a pleading fails to state a claim, in whole or in part, on which a court may grant relief, a defendant may seek to dismiss a complaint under Federal Rule of Civil Procedure 12(b)(6). Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. Plausibility requires "more than a sheer possibility that a defendant has acted unlawfully." Id. In considering a motion to dismiss, the Court must assume that the factual allegations contained in the complaint are true.

Twombly, 550 U.S. at 555–56.  However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to state a claim.  Iqbal, 556 U.S. at 678.

In patent infringement cases, the Iqbal/Twombly pleading standard governs allegations of infringement.  Golden v. Apple Inc., 819 F. App'x 930, 930–31 (Fed. Cir. 2020).  Some factual allegations must exist that, when taken as true, articulate why it is plausible that the accused product infringes the patent claim.  Bot M8 LLC v. Sony Corp., 4 F.4th 1342, 1353 (Fed. Cir. 2021).

## III.  Discussion

Morphle moves to dismiss Optrascan's first cause of action based on Optrascan's failure to plead sufficient facts to support an infringement claim for the '365 Patent.  Def's Br. at 1, 17–18.  Morphle moves to dismiss Optrascan's second cause of action for lack of patent-eligible subject matter within the claims set forth in the '376 Patent.  Id. at 1, 9–17.  For the reasons that follow, neither cause of action will be dismissed.

### a.  The '365 Patent

Liability for direct infringement arises when a party "without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent."  35 U.S.C. § 271(a).  To plead direct infringement, a plaintiff must recite

"some factual allegations that, *when taken as true*, articulate why it is plausible that the accused product infringes the patent claim." Bot M8, 4 F.4th at 1353 (emphasis added). To satisfy the Iqbal pleading standard in a patent case, "[s]pecific facts are not necessary." Disc Disease Sols. Inc. v. VGH Sols., Inc., 888 F.3d 1256, 1260 (Fed. Cir. 2018) (quotation omitted). The complaint needs only to give a defendant "fair notice of what the [infringement] claim is and the ground upon which it rests." Id. (quoting Erickson v. Pardus, 551 U.S. 89, 93 (2007)).

     Morphle argues that Optrascan failed to plead facts showing that the final limitation of claim 1 of the '365 Patent was met. Def.'s Br. at 17–18. The final limitation of claim 1 of the '365 Patent describes a "support base of the slide transfer assembly being configured to move horizontally in an X-Y plane in order to transfer a slide from the slide basket transfer assembly to the slide scanning stage of the slide scanner." '365 Patent at 14:5–8. Morphle avers that Optrascan's claim is merely conclusory and fails to identify what structures or components of Morphle's products qualify as the slide transfer assembly or the slide scanning stage. Def. Br. at 17–18. Additionally, Morphle maintains that the slides placed in a MorphoLens for scanning always remain in a slide basket; no slides are taken individually from the basket to a slide scanning stage. Def. Br. at 17.

In its opposition brief, Optrascan argues that its claim chart and screenshots from the MorphoLens demo video show horizontal movement of a slide basket transfer assembly. Pl.'s Br. at 10–11. In its reply, Morphle reiterates that Optrascan failed to identify the structures in Morphle's product that are the slide transfer assembly, support base, or slide scanning stage. Def.'s Reply Br. at 8. Further, Morphle emphasizes that its slide basket does not move in a vertical direction. Def. Reply Br. at 9–10.

At this stage of the proceedings before discovery, Optrascan is not required to dissect and identify each individual component of Morphle's product. Patent infringement cases are not subject to a heightened pleading standard; "[s]pecific facts are not necessary." Disc Disease Sols. Inc., 888 F.3d at 1260 (quotation omitted). As noted during oral argument, Optrascan has not had an opportunity to examine a sample of Morphle's product, but it would be able to do so during discovery. Oral Arg. Tr. at 72:25–73:18. Nonetheless, Optrascan's complaint sufficiently alleges and notifies Morphle of its claim and the ground upon which it rests.

Optrascan alleges, upon its information and belief, that "the support base of the slide transfer assembly in the MorphoLens 240 moves horizontally in an X-Y plane that is perpendicular to the Z axis to transfer the slide from the slide basket transfer assembly to the slide scanning stage." Am. Comp. ¶ 22. The final

limitation of claim 1 of the '365 Patent describes a "support base of the slide transfer assembly being configured to move horizontally in an X-Y plane in order to transfer a slide from the slide basket transfer assembly to the slide scanning stage of the slide scanner." '365 Patent at 14:5–8.

The video[1] cited in the Amended Complaint shows horizontal movement. In the video, a tray holding multiple slides is pulled horizontally from a vertical stack of slides and placed under a microscope lens. As each slide is scanned, the tray is pulled out further horizontally to continue scanning under the microscope. Here, Optrascan has identified the infringing product and the specific infringing functionality by describing the horizontal movement and the movement's purpose.

Additionally, while Morphle is correct that the video does not show vertical movement, the video does show slides stacked vertically. Optrascan alleges, based upon its information and belief, that in order to scan the slides held in the slide basket, "the slide basket holder of the slide basket transfer assembly must move on the vertical Z axis to retrieve and scan the other slide baskets and provide the retrieved slide baskets to the slide transfer assembly." Am. Compl. ¶ 21. In claim 1, the '365 Patent describes "a slide basket holder of the slide basket transfer assembly being configured to move vertically." '365 Patent at 14:1–2.

---

[1] The Court was not provided a copy of the MorphoLens 240 demonstration video, but Plaintiff provided a link to the video, which was posted on Defendant's website, in the Amended Complaint.

Morphle focuses its argument on the fact that the demo video does not show any vertical movement. However, the video does show a vertical stack of slides. It would belie common sense to find, at this preliminary stage of litigation, that no component of Morphle's product moves vertically to interact with the vertical stack of slides. Optrascan has plausibly identified Morphle's infringing product and sufficient infringing functionality by describing the vertical movement and the movement's purpose.

The Iqbal/Twombly standard is a low bar, and Optrascan has pleaded an infringement claim sufficient to advance to the next step of litigation. Optrascan has identified multiple limitations set forth in claim 1 of the '365 Patent that may be infringed by Morphle's product. Taking non-movant Optrascan's allegations as true, Optrascan has articulated a plausible claim of infringement of its '365 Patent.

### b. The '376 Patent

Morphle moves to dismiss Optrascan's second cause of action because the claims set forth in the '376 Patent lack patent-eligible subject matter under 35 U.S.C. § 101. Def.'s Br. at 9–17. Patentability is "a threshold test." Bilski v. Kappos, 561 U.S. 593, 602 (2010). 35 U.S.C. § 101 makes patentable "any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof." 35 U.S.C. § 101. This broad provision has three important exceptions: "[l]aws of nature, natural phenomena, and abstract ideas are

not patentable." Alice Corp. Pty. Ltd. v. CLS Bank Int'l ("Alice"), 573 U.S. 208, 216 (2014). The purpose of these exceptions is to protect the "basic tools of scientific and technological work." Mayo Collaborative Servs. v. Prometheus Labs., Inc. ("Mayo"), 566 U.S. 66, 71 (2012). Eligibility "is a question of law" that may involve "underlying questions of fact." Simio, LLC v. FlexSim Software Prods., Inc., 983 F.3d 1353, 1358–59 (Fed. Cir. 2020).

In Alice Corporation Pty., Ltd. v. CLS Bank International ("Alice"), 573 U.S. 208 (2014), the Supreme Court reaffirmed the two-step framework set forth in Mayo Collaborative Services v. Prometheus Labs., Inc. ("Mayo"), 566 U.S. 66 (2012) for distinguishing patents that claim ineligible subject matter from those that claim patent-eligible applications of those concepts. Alice, 573 U.S. at 217.

In step one, the court must determine whether the claims are drawn to a patent-ineligible concept, such as an abstract idea. Id. To do so, the court examines the focus of the claim and its character as a whole. SAP Am., Inc. v. InvestPic, LLC, 898 F.3d 1161, 1167 (Fed. Cir. 2018). Courts must consider whether the focus of the claims is on "the specific asserted improvement in computer capabilities . . . or, instead, on a process that qualifies as an 'abstract idea' for which computers are invoked merely as a tool." Finjan, Inc. v. Blue Coat Sys., Inc., 879 F.3d 1299, 1303 (Fed. Cir. 2018) (quoting Enfish, LLC v. Microsoft Corp., 822 F.3d 1327, 1335–36 (Fed. Cir. 2016)).

If the claims are drawn to an abstract idea at step one of the analysis, the court then turns to step two to examine "the elements of each claim both individually and as an ordered combination" to see if there is an "inventive concept—i.e., an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the ineligible concept itself." Alice, 573 U.S. at 217–18 (internal quotation and citation omitted). "A claim that recites an abstract idea must include additional features to ensure that the claim is more than a drafting effort designed to monopolize the abstract idea." Id. at 221 (internal quotation omitted). Such "additional features" are not enough to constitute an inventive concept if they are "well-understood, routine, conventional activities." Id. at 225 (citation omitted). To transform an unpatentable concept into a patent-eligible application, "one must do more than simply state the [ineligible concept] while adding the words 'apply it.'" Mayo, 566 U.S. at 72.

### i. Alice Step One

Morphle argues that claim 1 of the '376 Patent automates human activity, namely, the receipt and analysis of data. Def.'s Br. at 9–11. Further, Morphle contends that the '376 Patent does not improve any computer functionality, processing device, or algorithm. Id. at 11–12. In its opposition brief, Optrascan does not expressly rebut Morphle's argument under step one of the Alice

framework. Instead, Optrascan sets forth four arguments that pertain to considerations more appropriately analyzed under step two of the Alice framework. Pl.'s Br. at 3–9.

The limitations set forth in claim 1 are, "at their core, directed to the abstract idea of collecting, displaying, and manipulating data," which the Federal Circuit has held to be ineligible under § 101. Intell. Ventures I LLC v. Cap. One Fin. Corp., 850 F.3d 1332, 1340 (Fed. Cir. 2017); see also Elec. Power Grp., LLC v. Alstom S.A., 830 F.3d 1350, 1354 (Fed. Cir. 2016) ("The advance they purport to make is a process of gathering and analyzing information of a specified content, then displaying the results, and not any particular assertedly inventive technology for performing those functions. They are therefore directed to an abstract idea.").

The U.S. Court of Appeals for the Federal Circuit ("CAFC") has "treated collecting information, including when limited to particular content (which does not change its character as information), as within the realm of abstract ideas." Elec. Power Grp., 830 F.3d at 1353 (collecting cases). Similarly, the CAFC has "recognized that merely presenting the results of abstract processes of collecting and analyzing information, without more (such as identifying a particular tool for presentation), is abstract as an ancillary part of such collection and analysis." Id. at 1354. As in Electric Power Group, LLC v. Alstom S.A., 830 F.3d 1350 (Fed. Cir. 2016), "[h]ere, the claims are clearly focused on the combination of those

abstract-idea processes." Id. Thus, Optrascan's '376 Patent fails to overcome step one of Alice, and the analysis must proceed to step two.

### ii. Alice Step Two

Morphle avers that neither claims 1, 2, 4–6, nor 10–12 of the '376 Patent present an inventive concept. Def.'s Br. at 12–17. Morphle contends that the claims involve processes that can be done manually or automated processes that are already well-understood, routine, and conventional within the industry. Id. at 12–17. Optrascan argues that the combined functionality of the limitations described in claim 1 are an inventive concept. Pl.'s Br. at 4–5. Optrascan asserts that the combined functionality is a technical improvement that is not well-understood, routine, or conventional. Id. at 5–6. Optrascan avers that its consolidated system provides an "improved and more accurate diagnosis of the pathological condition." Id. at 4,6–8; see also '376 Patent at 1:17–26; Am. Compl. ¶¶ 28, 29. The '376 Patent survives step two of Alice because the "combination of elements" amounts to an "inventive concept." 573 U.S. at 217–18.

### a. Claim 1

Claim 1 of the '376 Patent survives because it does more than "simply append[] conventional steps, specified at a high level of generality, to laws of nature, natural phenomena, [or] abstract ideas[.]" Mayo, 566 U.S. at 82. The '376 Patent "combines high resolution imaging offered by digital pathology with

complex object recognition algorithms [to] provide a more comprehensive assessment and an aid for the pathologists to provide more accurate quantification of biomarkers." Pl.'s Br. at 4. In particular, the combination of executing a segmentation process to identify cells on a slide, then analyzing the cells with a classification algorithm to determine "a tumor cell percent positivity value and an immune cell percent positivity value," and, finally "calculating a treatment efficacy score from the tumor cell percent positivity value and the immune cell percent positivity value," '376 Patent at 8:19–28, in one system is an inventive concept "designed to solve a technological problem in conventional industry practice." Alice, 573 U.S. at 223 (internal quotation omitted).

    Optrascan concedes that "all the ['376 Patent's] features/functions are available on separate platforms," '376 Patent at 2:1–2, but the '376 Patent establishes "an innovative consolidated system." Am. Compl. ¶ 28. Conventional immunotherapy systems "require separate devices and processes," while the '376 Patent "provides a fully automated analytics application that is integrated into a slide scanner as the slide is being scanned without using third party software." Id. This consolidated system amounts to an arguably inventive combination of methods that generates new data and increased accuracy for determining treatment efficacy.

In particular, Optrascan alleges that identifying immune cells is difficult to complete manually, and it is infeasible to do so with reproduceable results. Pl.'s Br. at 6; Oral Arg. Tr. at 61:3–13, 83:1–16; see '376 Patent at 1:30–60. The '376 Patent provides improved accuracy in identifying immune cells. Oral Arg. Tr. at 83:4–8. Conventional methods produced inaccurate and irreproducible results. Id. at 83:8–13. More accurate identification of immune cells leads to improved diagnostic accuracy in immunotherapy treatment. Id. at 83:1–16.

The Court concludes that the '376 Patent represents an improvement over the prior art because it combines, in one system, cell segmentation and cell classification to produce a more accurate treatment efficacy score. The '376 Patent goes beyond merely collecting images or data when it calculates a more accurate treatment efficacy score that better informs physicians on what course of immunotherapy treatment to prescribe. The consolidated system is not only automated and streamlined, but it is also more accurate and more efficient in recommending treatment. Thus, the '376 Patent survives step two of Alice because the "combination of elements" presented amounts to an "inventive concept." 573 U.S. at 217.

### b. Dependent Claims 2, 4–6, and 10–12

The dependent claims of the '376 Patent survive step two of Alice for similar reasons. Claims 2, 4–6, relate to the combination of cell segmentation and

classification processes. '376 Patent at 8:29–9:4. Claims 10–12 describe image processing and display techniques for the slide samples. Id. at 9:50–10:23. These dependent claims add to the inventive process of the idea set forth in claim 1. Because claim 1 and its dependent claims establish an inventive concept, they are patent-eligible under 35 U.S.C. § 101. Therefore, Optrascan's second cause of action alleging infringement of the '376 Patent survives Morphle's motion to dismiss.

## IV. Conclusion

Accordingly, it is hereby

**ORDERED** that Morphle's Motion to Dismiss Amended Complaint for Failure to State a Claim on which Relief can be Granted (D.I. 12) is denied. It is further

**ORDERED** that Morphle's Motion to Dismiss for Failure to State a Claim on which Relief can be Granted (D.I. 6) is denied as moot.

DATED: October 11, 2024

/s/ Jennifer Choe-Groves
Jennifer Choe-Groves*
U.S. District Court Judge

---

* Judge Jennifer Choe-Groves, of the United States Court of International Trade, sitting by designation.